UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WALTER CURTIS MOLES,
ADC #119166                                                                                          PLAINTIFF

V.                               4:16CV00710 BRW/JTR

RICKY SHOURD,
Sheriff of White County et al.                                                              DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Walter Curtis Moles ("Moles") is a prisoner in the Arkansas Department of Correction ("ADC"). He has filed this *pro se* § 1983 action alleging that, while he was in the White County Detention Center ("WCDC"), Defendants Sheriff Ricky Shroud ("Sheriff Shroud"), Captain Brandon Grimes ("Captain Grimes"), Officer Becky McCollum ("Officer McCollum"), Nurse Sandra Cox ("Nurse Cox"), and Dr. Arthur Bentley ("Dr. Bentley") failed to provide him with constitutionally adequate medical care for a broken bone in his right foot. *Docs. 2 & 93*.

Defendants Dr. Bentley and Nurse Cox have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply. *Docs. 146, 147, 148, & 175*. Moles has filed a Response and a Statement of Disputed Facts. *Docs. 172 & 173*.

Defendants Sheriff Shourd, Captain Grimes, and Officer McCollum also have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. *Docs. 159, 160, & 161*. Moles has filed a Response and a Statement of Disputed Facts. *Docs. 169 & 170*.

Before addressing the merits of Defendants' Motions, the Court will summarize the relevant facts giving rise to Moles's claims:[1]

1. On July 12, 2016, Moles went to the emergency room *at Baptist Hospital in North Little Rock, Arkansas*, for an injury to his right foot that resulted from "running from someone who stole his car." An x-ray revealed that Moles had a closed displaced fracture of the fifth metatarsal bone in his right foot with some tissue swelling. The emergency room doctor gave Moles a walking boot and crutches. He was instructed to use both devices at all times, keep weight off of his right foot, and go to a scheduled orthopedic consult to determine whether surgery was need. Moles did not go to the orthopedic consult. *Doc. 146, Exs. 4 & 5; Doc. 169.*

2. On August 12, 2016, Moles, who was "under the influence" of an unspecified intoxicant, was arrested after he drove his car through a fence and ran into the woods. *Doc. 2 at 5; Doc. 169.* Later that day, he was booked into the WCDC. *Doc. 161, Ex. A; Doc. 169.* Moles was *not* wearing his walking boot or

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

using crutches as he was instructed to do, on July 12, 2016, by the emergency room physician who treated his injured right foot. *Id.*

3. On August 18, 2016, Moles got into a fight with his cell mate. *Doc. 146, Ex. 1.* Approximately three hours later, Moles was taken to the WCDC infirmary where Nurse Cox and Dr. Bentley noted that Moles's right foot was red and swollen. Moles told Nurse Cox and Dr. Bentley that he had broken a bone in his right foot "about a month ago," and that he "re-injured" his foot during his August 12 arrest and/or August 18 fight with his cell mate.[2]

4. Moles *falsely advised* Nurse Cox that he was treated and diagnosed for the broken bone in his right foot at *St. Vincent's Hospital* in Little Rock, Arkansas, *not* Baptist Hospital in North Little, Rock Arkansas. Nurse Cox prescribed Tylenol for Moles's pain. Moles claims he never received the Tylenol. Nurse Cox also faxed an "urgent" request to St. Vincent's Hospital seeking copies of Moles's July 2016 medical records. *Doc. 146, Exs. 1, 2, 3, 4 & 7; Doc. 173.*

5. During the next nine days, Moles filed several grievances and sick calls complaining of pain in his right foot; inquiring about whether his medical records

---

[2] Moles has *not* provided any medical evidence to support his contention that his previously injured foot was further damaged during his August 12 arrest or August 18 fight. Additionally, it is *undisputed* that August 18 is the first time that Moles reported *any foot pain* to the Defendants. This strongly suggests that any aggravation of the injury to his right foot occurred during the August 18 altercation, rather than his August 12 arrest.

had been received from *St. Vincent's Hospital;* requesting an x-ray of his right foot; and asking to see a doctor. In their responses to those grievances and sick call requests, Officer McCollum, Captain Grimes, and Nurse Cox explained that Moles was "on the list" to see a WCDC medical provider and that they were waiting to receive his relevant medical records from *St. Vincent's Hospital.* *Doc. 161, Ex. 2.*

6.  On August 28, 2016, Moles filed a grievance and a sick call request "withdrawing" all requests for medical care for his right foot. *Doc. 161, Ex. 2 at 19-20.*

7.  On August 29, 2016, Nurse Cox sent a sick call response to Moles explaining that she was unable to obtain any medical records from *St. Vincent's Hospital.* *Doc. 161, Ex. 2 at 10.*

8.  On August 30, 2016, Nurse Cox offered to examine Moles in the WCDC infirmary, but he *refused treatment.* Nurse Cox then contacted Dr. Bentley, who instructed her to schedule an x-ray of Moles's right foot at an off-site facility. *Doc. 161, Ex. 2 at 10; Doc. 146, Ex. 6 & 7.*

9.  On September 5, 2016, before the x-ray ordered by Dr. Bentley and Nurse Cox could be taken, Moles was transferred from the WCDC to the ADC. *Doc. 161, Ex. A.*

10.     In September of 2016, an x-ray taken by ADC medical providers revealed that Moles had an "old," "incompletely healed" fracture of the fifth metatarsal bone in his right foot, but no evidence of an "acute fracture, dislocation, or other soft tissue swelling seen."   Moles admitted to ADC medical providers that, *contrary to the emergency room doctor's July 12, 2016* orders, he did *not*:  (a) consistently wear his walking boot; (b) attend his orthopedic consult; and (c) keep weight off of his right foot.  ADC medical providers gave Moles a walking boot, treated his pain with Naproxen, and scheduled a private orthopedic consult.  *Doc. 146, Ex. 8.*

11.     In October and November of 2016, ADC personnel took Moles to a private orthopedist, who determined that he had a "healing" fracture of the fifth metatarsal bone with "mild displacement." The orthopedist also noted that Moles had a "good range of motion" and "minimal tenderness."   She instructed Moles to continue wearing his walking boot and to take Naproxen for pain.  *Doc. 146, Ex. 9; Doc. 170, Exs. 17 & 18.*

12.     On December 14, 2016, ADC personnel again took Moles to a follow-up appointment with the private orthopedist, who noted that Moles had "minimal tenderness" in the fractured fifth metatarsal bone, which was continuing to heal.

The orthopedist instructed Moles to "begin weaning out of his walking boot" and wear a regular shoe on his right foot.  *Doc. 146, Ex. 9 at 8; Doc. 107, Ex. 19.*

13.  On December 27, 2016, Moles returned the walking boot to the ADC infirmary because he "did not need" it any longer.  *Doc. 146, Ex. 9 at 11.*

14.  On January 18, 2017, ADC personnel took Moles for a final appointment with the private orthopedist, who released Moles because the fracture of his fifth metatarsal required no further care.  *Doc. 146, Ex. 9 at 19-20.*

## II.  Discussion

Defendants argue that they are entitled to summary judgment, as a matter of law, on the inadequate medical care claim Moles has asserted against them.  The Court concludes the Defendants' argument has merit.

To proceed to trial on his inadequate medical care claim, Moles must have some evidence demonstrating that, during his time at the WCDC:  (1) he had an objectively serious need for medical care for the broken bone in his right foot; and (2) Defendants subjectively knew of, but were deliberately indifferent to, that serious medical need.[3]  *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford*

---

[3] It is unclear whether Moles was a pretrial detainee or a convicted prisoner while he was in custody at the WCDC. However, that distinction makes no practical difference because the legal standard used to evaluate a pretrial detainee's inadequate medical care claim under the Fourteenth Amendment's Due Process Clause *is the same legal standard* used to evaluate a convicted

*v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Here, there is *no evidence* that any of the Defendants were deliberately indifferent to Moles's need for medical care for the broken bone in his right foot. To the contrary, it is *undisputed* that, when Moles first complained of right foot pain on August 18, 2016, Defendants examined his foot, prescribed over the counter pain medications, and requested his medical records from *St. Vincent's Hospital*, the place *Moles erroneously told them* he had been diagnosed with a broken foot. When Defendants, through no fault of their own, were unable to obtain Moles's medical records from *St. Vincent's Hospital* (because he actually had been treated for his foot injury at Baptist Hospital in North Little Rock), they made arrangements to have an x-ray taken of Moles's right foot at a White County hospital and also offered to have him examined by WCDC medical personnel. *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding that no deliberate

---

prisoner's inadequate medical care claim under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Vaughn v. Greene Cnty., Ark.,* 438 F.3d 845, 850 (8th Cir. 2006).

indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"); *Logan v. Clarke,* 119 F.3d 647, 649-50 (8th Cir. 1997) (same).

On August 28, 2016, Moles *refused* all further medical treatment offered by the WCDC. *See Meuir v. Greene Cnty. Jail Emp.,* 487 F.3d 1115, 1118-19 (8th Cir. 2007) (finding no deliberate indifference when a prisoner refused medical care); *Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001) (finding no deliberate indifference when a prisoner refused to comply with the recommended course of medical care). None of the foregoing facts suggest even a hint of deliberate indifference by any of the Defendants.

Finally, to avoid summary judgment, Moles "must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006). Moles has *not* come forward with any verifying evidence establishing that he was harmed by the alleged delay in him receiving medical care for his injured right foot while he was incarcerated in the WCDC. Finally, it is undisputed that, on January 18, 2017, a non-party orthopedic specialist determined that the broken bone in Moles's right foot had fully healed and released him from further medical care. This is strong medical evidence that any arguable delay in Moles receiving medical care at the WCDC (which was caused by

9

Moles providing the wrong name of the hospital where he initially was treated for his injured right foot) did *not* cause any harm to his foot.

Because there is *no evidence* that Defendants were deliberately indifferent to Moles's need for medical care for his injured right foot, they are entitled to summary judgment, and Moles's inadequate medical care claim should be dismissed, with prejudice. *See Meuir*, 487 F.3d at 1118 (explaining that, to defeat summary judgment, a prisoner "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded" his need for medical care).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motions for Summary Judgment *(Docs. 146 &159)* be GRANTED, and that Moles's inadequate medical care claims against Defendants Shourd, Grimes, McCollum, Cox, and Bentley be DISMISSED, WITH PREJUDICE.[4]

Dated this 7th day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] On December 29, 2016, Moles voluntarily dismissed, *without prejudice*, all other claims raised in his Complaint. Doc. 66.